**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**SHREVEPORT DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | CRIMINAL ACTION NO. 05-50079-02 |
| VERSUS | CIVIL ACTION NO. 07-1750 |
| JASON RAKEL | JUDGE S. MAURICE HICKS, JR. |

**MEMORANDUM RULING**

Before the Court is a Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Record Document 56) filed by the Petitioner, Jason Rakel ("Rakel"). Rakel seeks to have his sentence corrected on the grounds of ineffective assistance of counsel during his guilty plea and sentencing. See id. Rakel contends that the ineffective assistance of counsel resulted in his guilty plea being involuntary. See id. He asks to be resentenced without a mandatory minimum and with a more effective attorney. See id. at 12. For the reasons discussed herein, Rakel's motion is **DENIED**.

**BACKGROUND**

On August 25, 2005, a federal grand jury returned a one-count indictment against Rakel and Sherri Lea Harrison. See Record Document 7. The Indictment charged them with knowingly and intentionally conspiring and agreeing together to distribute 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine, all in violation of 21 U.S.C. §§ 841(a)(1) and 846. See id. The Indictment alleged that the conspiracy began sometime in May 2005 and continued through August 4, 2005. See id.

On November 10, 2005, Rakel pleaded guilty to the Indictment. See Record Documents 29-31. At that time, the Government filed a motion for a one-point reduction

under U.S.S.G. § 3E1.1 for acceptance of responsibility.  See Record Document 29.  The

Government also filed a Notice of Prior Convictions, pursuant to 21 U.S.C. § 851.  See

Record Document 30.

      The written factual basis submitted at the time of Rakel's guilty plea provided:

>       On 06-29-2005 TFA Anderson arrested Chad James after a traffic stop revealed James to be in possession of methamphetamines.  Agents then took James to his residence at which time TFA Anderson found a safe containing approximately 52.7 grams of ICE.  TFA Anderson then found approximately 116 grams of ICE in the living room end table.  TFA Anderson also found several more drug related items including drug paraphernalia and drug ledgers.  Based upon the statements of James and the drug ledgers, it was determined that James had purchased and sold in excess of 800 grams of ICE.  James advised his source of supply was Sherri Harrison and that she lived in Dallas.  James stated he began buying ICE from her in May of 2005 and that he would pool his money with Jason Rakel to get a better price.  James made recorded phone calls to both Harrison and Rakel in which they openly discussed their previous drug transactions and the possibility of new transactions.  Harrison and Rakel were arrested together in Dallas pursuant to an arrest warrant and were found to be in possession of a small amount of methamphetamine and paraphernalia.  Both individuals admitted to their role in the conspiracy.

Record Document 31-2.  Rakel signed the written factual basis on November 10, 2005.

See id.  With his signature, Rakel "agree[d] and stipulate[d] that the [written factual basis]

adequately describe[d] his role in the offense of conspiracy to distribute 50 grams or more

of methamphetamine or 500 grams or more of a mixture or substance containing a

detectable amount of methamphetamine for the purposes of establishing his guilty beyond

a reasonable doubt."  Id.

      On February 22, 2006, Rakel was sentenced to 240 months imprisonment and ten

years supervised release upon his release from prison.  See Record Document 36.  He

filed a Notice of Appeal on March 3, 2006.  See Record Document 38.

      On December 12, 2006, the United States Court of Appeals for the Fifth Circuit

affirmed Rakel's conviction for conspiracy to distribute methamphetamine.  See Record

Document 55.  The Per Curiam opinion stated:

> Jason Rakel appeals his conviction for conspiracy to distribute methamphetamine.  For the first time on appeal, he argues that his guilty plea was not supported by a sufficient factual basis.  We hold that Rakel's admitted purchase of 70.7 grams of methamphetamine in a two-week period is indicative of distribution, not personal use.  Consequently, the district court did not plainly err in accepting his plea.  See United States v. Palmer, 456 F.3d 484, 489, 492 (5th Cir. 2006).
> AFFIRMED.

Id.  The decision was issued as mandate on January 3, 2007.  See id.

## LAW AND ANALYSIS

### A.    Claims Not Cognizable Under 28 U.S.C. § 2255.

After conviction and exhaustion of a defendant's right to appeal, the Court is "entitled

to presume that the defendant stands fairly and finally convicted."  U.S. v. Shaid, 937 F.2d

228, 231-32 (5th Cir. 1991), quoting U.S. v. Frady, 456 U.S. 152, 164, 102 S.Ct. 1584,

1592 (1982).  "Our trial and appellate procedures are not so unreliable that we may not

afford their completed operation any binding effect beyond the next in a series of endless

post conviction collateral attacks.  To the contrary, a final judgment commands respect."

Frady, 456 U.S. at 164-65, 102 S.Ct. at 1593.  Consequently, issues that can be presented

in a motion filed under 28 U.S.C. § 2255 are limited.  A defendant can challenge a final

conviction only on issues of constitutional or jurisdictional magnitude.  See Shaid, 937 F.2d

at 232.  As the Fifth Circuit has stated:

> Relief under 28 U.S.C. § 2255 is reserved for transgressions of constitutional rights and for a narrow range of injuries that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice.  Nonconstitutional claims that could have been raised on direct appeal, but were not, may not be asserted in a collateral proceeding.

U.S. v. Vaughn, 955 F.2d 367, 368 (5th Cir. 1992) (citations omitted).

Even if a defendant has issues that are constitutional or jurisdictional in nature, he may be procedurally barred from raising them.  In order to raise an issue for the first time on collateral review, a defendant  must show both "cause" for his procedural default and "actual prejudice" resulting from the error.  Id. at 168.  To establish "cause," a defendant must show some external impediment prevented him from raising the claim on direct appeal.  See U.S. v. Flores, 981 F.2d 231, 235 (5th Cir. 1993).  In order to meet the "actual prejudice" test, he must demonstrate not just the possibility of prejudice, "but an actual and substantial disadvantage, infecting his entire trial with error of constitutional dimension." Shaid, 937 F.2d at 233.

A narrow exception to the "cause and actual prejudice" requirement exists in extraordinary cases "in which a constitutional violation has probably resulted in the conviction of one who is actually innocent."  Id. at 232.  The Supreme Court has emphasized that this exception is limited to only those cases involving "manifest miscarriages of injustice" that would result in the continued incarceration of an innocent person.[1]  Id., citing Smith v. Murray, 477 U.S. 527, 537, 106 S.Ct. 2661, 2649 (1986).

In his motion, Rakel vaguely refers to misstatements made by the Court that he claims rendered his guilty plea involuntary.  See Record Document 56 at 8-9, 11. Specifically, he alleged that the "Court misadvised him;" that the Court gave him

---

[1]To establish "actual innocence" in a case where the petitioner entered a plea of guilty, he must demonstrate that "in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  Bousley v. United States, 523 U.S. 614, 623, 118 S.Ct. 1604, 1611, 140 L.Ed.2d 828 (1998), citing Schlup v. Delo, 513 U.S. 298, 327-28, 115 S.Ct. 851, 867-68, 130 L.Ed.2d 808 (1995).

"misinformation . . . during the Rule 11 colloquy;" and that the Court misunderstood the law.

Id.  Rakel's contentions relating to any alleged mishandling of his guilty plea by the Court

cannot be presently considered, as such claims are procedurally defaulted.

In Bousley v. U.S., 523 U.S. 614, 118 S.Ct. 1604 (1998), the Supreme Court stated:

> We have strictly limited the circumstances under which a guilty plea
> may be attacked on collateral review.  It is well settled that a voluntary and
> intelligent plea of guilty made by an accused person, who has been advised
> by competent counsel, may not be collaterally attacked.  And even the
> voluntariness and intelligence of a guilty plea can be attacked on collateral
> review only if first challenged on direct review.  Habeas review is an
> extraordinary remedy and " 'will not be allowed to do service for an appeal.
>
> . . .
>
> Where a defendant has procedurally defaulted a claim by failing to
> raise it on direct review, the claim may be raised in habeas only if the
> defendant can first demonstrate either cause and actual prejudice, or that he
> is actually innocent.

Id. at 621-622; 118 S.C.t at 1610-1611 (internal citations and quotations omitted).  Here,

Rakel contends that misstatements by the Court rendered his guilty plea involuntary.  As

noted in Bousley, the voluntariness of a guilty plea cannot be attacked on collateral review

unless first challenged on direct appeal.  In his appeal, Rakel disputed the sufficiency of the

written factual basis, but did not challenge the voluntariness of his guilty plea.  In failing to

do so, he procedurally defaulted his claim that misstatements by the Court rendered his

guilty plea involuntary.  Moreover, he has presented no "cause" for the procedural default

and neither the record nor any argument presented by Rakel supports a finding of actual

innocence.  Accordingly, Rakel's claims as to the Court's alleged misstatements during his

guilty plea cannot be presently considered and the Section 2255 motion asserted on these

grounds is denied.

**B.      Ineffective Assistance of Counsel Claims.**

The general ruling prohibiting a defendant from raising claims on collateral review absent "cause" and "actual prejudice" does not apply to claims of ineffective assistance of counsel.  Massaro v. U.S., 538 U.S. 500, 504, 123 S.Ct. 1690, 1693 (2003).   The procedural-default rule is a doctrine employed by the courts "to conserve judicial resources and to respect the law's important interest in the finality of judgments."  Id.  Requiring a criminal defendant to bring ineffective assistance of counsel claims on a direct appeal promotes neither of these objectives.   Moreover, a claim of ineffective assistance of counsel cannot be properly resolved on appeal because there has been no opportunity to develop the record on the merits of these allegations.  See U.S. v. Alanis, 88 Fed. Appx. 15, 19 (5th Cir. 2004).  Thus, a criminal defendant is properly permitted to bring ineffective assistance of counsel claims in a collateral proceeding under Section 2255, regardless of whether such claims could have been raised on direct appeal.  See id.

To prevail on his claims of ineffective assistance of counsel, Rakel must prove  (1) that his counsel's actions fell below an objective standard of reasonableness and (2) that his counsel's ineffective assistance was prejudicial.  See Strickland v. Washington, 466 U.S. 668, 104 S. Ct. 2052 (1984); Bryant v. Scott, 28 F.3d 1411, 1414-1415 (5th Cir. 1994). Under the first prong of the Strickland analysis, Rakel must show that his counsel "made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment."  Id. at 687, 104 S.Ct. at 2064.  The court is to presume that the attorney's actions are encompassed within the wide range of reasonable competence and fall under the ambit of trial strategy.  The defendant may overcome this presumption only by showing that under the "totality of the circumstances," the attorney's

performance was "outside the wide range of professionally competent assistance." Id., 466 U.S. at 690, 104 S.Ct. at 2066.   Under the second prong of the Strickland test, the defendant must show "that there is a reasonable probability that, but for counsel's specified errors, the result of the proceeding would have been different." Murray v. Maggio, 736 F.2d 279, 282 (5th Cir. 1984).  "A reasonable probability is a probability sufficient to undermine confidence in the outcome."  Strickland, 466 U.S. at 694, 104 S.Ct. at 2068.

Failure to establish either Strickland prong defeats the claim.  See Tucker v. Johnson, 115 F.3d 276, 280 (5th Cir. 1997).   Courts may also analyze the prongs in any order.  See Goodwin v. Johnson, 132 F.3d 162, 173 n. 6 (5th Cir. 1997) ("[T]here is no reason for a court deciding an ineffective assistance claim to approach the inquiry in the same order or even to address both components of the inquiry if the defendant makes an insufficient showing on one.").

Guilty Plea

"A voluntary guilty plea waives all nonjurisdictional defects in the proceedings against the defendant." U.S. v. Glinsey, 209 F.3d 386, 392 (5th Cir. 2000) (internal citation omitted).  This waiver includes claims of ineffective assistance of counsel except insofar as the ineffectiveness is alleged to have rendered the guilty plea involuntary.  See id.

Rakel contends that his plea agreement, guilty plea, and admissions made during the guilty plea hearing were not voluntary because of the "misadvisements" by his attorney. Record Document 56 at 8; Record Document 61 at 2-3.  Specifically, he argues that his attorney erred when he advised him to admit at the plea hearing that (1) he was guilty of conspiracy; (2) he was guilty of the elements of the offense; (3) his minimum sentence was

20 years; (4) he purchased "Ice;"[2] and (5) all facts set out in the factual basis were true. See Record Document 56 at 6.  Rakel further contends that during the guilty plea hearing, he did not admit to the drug quantity allegation contained in the Indictment.  See Record Document 61 at 6-7.[3]

Despite his arguments to the contrary, a review of the guilty plea transcript in this matter easily establishes that Rakel's guilty plea was voluntary.  Rakel stated during the plea hearing that his plea was "a free and voluntary act on [his] part."  Guilty Plea Transcript at 15; U.S. v. Wilkes, 20 F.3d 651, 653 (5th Cir. 1994), citing Blackledge v. Allison, 431 U.S. 63, 74, 97 S.Ct. 1621, 1629 (1977) ("Sworn statements made in open court during a plea hearing 'carry a strong presumption of verity.'").  Rakel claims that his attorney was ineffective for advising him to plead guilty to a conspiracy and to admit to the elements of the offense.  However, the Fifth Circuit stated in its per curiam opinion that Rakel's conspiracy conviction was supported by *his admitted* purchase of 70.7 grams of methamphetamine in a two-week period.  During the plea hearing, Rakel stated that he understood that he"was part of a conspiracy to distribute methamphetamine."  Id. at 3.  The undersigned also explained the elements of the offense to Rakel and then asked:

> THE COURT:    Now, all of that explains with a conspiracy charge in the distribution of methamphetamine has been filed against you.  Can the government prove all of that against you

---

[2]Rakel contends that his attorney was ineffective because he failed to investigate the chemistry involved to determine if the substance at issue in this case was "Ice."  Record Document 61 at 4.

[3]Rakel contends that he "balked at the admissions he had to make" and that he "would not admit to the quantity of drugs discussed by the Court at the change of plea hearing and did not admit that he ever sold any meth involved in the case."  Record Document 56 at 4.

if they went to trial, in your opinion?

THE DEFENDANT: From my understanding, the evidence they have, yes.

Id. at 14.  Based on the foregoing, the Court finds that the attorney's advice for Rakel to plead guilty and to admit the elements of the offense can hardly be considered outside the wide range of professionally competent assistance.

Likewise, Rakel's claims relating to minimum sentence, drug quantity, the identification of the substance at issue, and the factual basis fail.  The Indictment charged Rakel with knowingly and intentionally conspiring and agreeing together to distribute **50 grams or more** of methamphetamine or **500 grams or more** of a mixture or substance containing a detectable amount of methamphetamine, in violation of 21 U.S.C. § 841(a)(1).  See Record Document 7.  The penalty provision for an offense entailing 50 grams or more of methamphetamine or 500 grams or more of a mixture or substance containing a detectable amount of methamphetamine is delineated at 21 U.S.C. § 841(b)(1)(A)(viii) which provides that for a defendant with a prior felony drug offense the term of imprisonment is not less than twenty years and not more than life.  Rakel does not dispute his prior felony drug offense.  He acknowledged his prior narcotics conviction during the plea hearing.  See Guilty Plea Transcript at 16-17.  The undersigned further explained:

> THE COURT:  Now, in this particular instance, because you have admitted to the notice of prior narcotics convictions, the maximum punishment is increased, and it actually becomes a mandatory minimum period of time of not 10 but 20 years in prison.

Id. at 16.

The Fifth Circuit's opinion, the plea package, and the transcript of the guilty plea in this matter further confirm that Rakel admitted to a conspiracy entailing more than 50

grams of methamphetamine.  Rakel's signed factual basis is "accorded great evidentiary weight." U.S. v. Abreo, 30 F.3d 29, 32 (5th Cir. 1994).  Further, his sworn statements made in open court during the plea hearing "carry a strong presumption of verity."  Wilkes, 20 F.3d at 653.  The following excerpts from the plea colloquy are telling:

> THE COURT:      In this instance, the factual basis recounts a finding of 52.7 grams of Ice in a safe, about 116 grams of Ice on the living room end table, and following that discovery – it looks like we have about 800 grams of Ice total that's involved in all of this. Is that about your understanding of this?
>
> THE DEFENDANT: I wasn't there when they found it. That was at someone else's house.  But that's my understanding, he found that much.
>
> THE COURT:      How were you involved in the distribution of methamphetamine or Ice?
>
> THE DEFENDANT: I knew Sherry Harrison.  I used to – I used to get my, my Ice from her, but – you know that I have a prior conviction.  And after that, I was, was scared to make the trip. I wouldn't do it as much. So I would –  Sherry introduced me to Chad, the person that was busted with the 116 grams and the 52 grams, and ***I would give him money to purchase Ice.*** So that would be my part.
>
> . . .
>
> THE COURT:      There's an allegation in here that, according to Mr. James, he began buying Ice from Sherry Harrison in May of 2005 and that he would pool his money with your money to get a better price.
>
> THE DEFENDANT: I only knew James for about two weeks before he got busted. But I – I can't say that he didn't know Sherry.  I don't know how long he knew Sherry.  That was one of Sherry's friends.  She introduced me to him.
>
> THE COURT:      Would you pool your money with Mr. James in order to try to get a better price?

THE DEFENDANT: I would – I would give him money. I don't know if he got a better price. I just, you know – I wanted my drugs, so I would give him money.

THE COURT:      All right, sir.  I'll accept the Factual Basis as filed into the record.  Mr. Rakel, do you have any questions about anything contained in that Factual Basis?  If you do, now is the time to tell me.

THE DEFENDANT: I have no, no questions. I mean . . .

THE COURT:      **Do you disagree with any part of it?**

THE DEFENDANT: **I mean, I only knew James for two weeks. I bought Ice from him on two different occasions.  I – it's in that other affidavit. I got the 14 grams from him and then I got the 2 ounces from him, and that's the only dealings I had with James.**

THE COURT:      **That's probably enough.**

THE DEFENDANT: **It is. It's over 50 grams.  Therefore, I'm guilty, and that's why I am pleading guilty.**

Guilty Plea Transcript at 6-7 (emphasis added).  Rakel clearly admitted to conduct entailing a conspiracy to distribute more than 50 grams of methamphetamines.[4]   Thus, the Indictment and the written factual basis accurately reflected Rakel's conduct and, under the totality of the circumstances, his attorney cannot be said to be ineffective for recommending he admit his guilt.  Such recommendations clearly fall within the wide range of reasonable competence and fall under the ambit of trial strategy.

Rakel's statements during the guilty plea also demonstrate that his contention that his lawyer should have argued at the plea that the substance at issue was not "Ice" is

---

[4]Rakel admitted to buying 14 grams and 2 ounces of Ice.  One ounce is equivalent to 28.35 grams.  See Record Document 58-1 at 14-15.  Therefore, Rakel admitted to purchasing 70.7 grams of methamphetamine.

meritless.  Throughout the guilty plea, Rakel himself referred to Ice.  Yet, more importantly, whether or not the offense in this matter involved "Ice" had no affect on the statutory penalty.  See U.S. v. Gore, No. 05-41824, 2007 WL 26822, **1 (5th Cir. Jan. 4, 2007) ("The fact that the methamphetamine involved in the offense was 'ice' was not a fact that increased the statutory penalty for [the] crime such that it, in effect, became an essential 'element' of the offense charged."); U.S. v. Clark, No. 05-41819, 2006 WL 2590301, **1 (5th Cir. Sept. 8, 2006) ("While 21 U.S.C. § 841(b)(1) provides different statutory penalties for different quantities of methamphetamine, it does not make a distinction between methamphetamine and 'ice.'  Because the fact that the methamphetamine involved in [the] offense was 'ice' does not affect the statutory penalty for his crime, that fact is not an 'element' of the offense.").  Rakel admitted to an offense entailing more than 50 grams of methamphetamines and was properly sentenced under 21 U.S.C. § 841(b)(1)(A)(viii). Therefore, Rakel's attorney was not ineffective for failing to argue at the plea that the substance at issue was not "Ice."  See Wilkes, 20 F.3d at 653.

Sentencing

Rakel further contends that his lawyer "was ineffective because he failed to properly research the law concerning the complicated federal sentencing procedures" and "failed to properly prepare for sentencing."  Record Document 61 at 2.  More specifically, he refers to his attorney's failure to know the legal definition of ice; his lawyer's failure to argue that Rakel had no minimum sentence; his lawyer's failure to advise the Court of his cooperation with law enforcement; and that the sentence was above the true guideline range.  See id. at 3-5, 6.

The Court addressed Rakel's contentions regarding "Ice" and minimum sentence

in its previous analysis relating to the guilty plea hearing.  The same rationale applies in the context of sentencing, as it is clear that whether or not the offense in this matter involved "Ice" had no affect on the statutory penalty and that Rakel fully understood that he faced a 20 year mandatory minimum sentence.  Again, the attorney was not ineffective for failing to press these frivolous points.  See Sones v. Hargett, 61 F.3d 410, 415 n. 5 (5th  Cir. 1995) ("Counsel cannot be deficient for failing to press a frivolous point.").

Rakel argues that his attorney was ineffective for failing to advise the Court that he cooperated with law enforcement.  However, the Government did not file any type of motion for reduction of sentence based on Rakel's substantial assistance.  Without such a motion, the mention of any cooperation with law enforcement would not have had any effect on the sentence.  Thus, the attorney's failure to raise this issue did not fall below an objective standard of reasonableness.

Finally, Rakel's contention that his attorney was ineffective for failing to object to a sentence that was above the guideline range is meritless.  As previously discussed, a mandatory statutory minimum sentence of 20 years applied in this case and the guideline range was inapplicable.  The attorney was not ineffective for failing to raise a meritless objection at sentencing.  See Wilkes, 20 F.3d at 653; Sones, 61 F.3d at 415 n. 5.[5]

**CONCLUSION**

The Court finds Rakel's claims concerning the voluntariness of his guilty pleas and

---

[5]In his motion, Rakel briefly mentions that his appellate counsel was deficient for not appealing his  sentence.  See Record Document 56 at 11.  This argument appears to be based on Rakel's contention that there was no 20 year mandatory minimum sentence and that his sentence was above the true guideline range.  As set forth previously, these arguments are frivolous.  Rakel's appellate counsel cannot be said to be ineffective for failing to raise frivolous issues on appeal.

ineffective assistance of counsel are without merit.  Accordingly, Rakel's Motion to Vacate, Set Aside, or Correct Sentence under 28 U.S.C. § 2255 (Record Document 56) is **DENIED**.[6]

       **THUS DONE AND SIGNED**, at Shreveport, Louisiana, this 24th day of March, 2011.

                                                                      S. MAURICE HICKS, JR.
                                        UNITED STATES DISTRICT JUDGE

---

[6]Rakel also filed a Motion for Status Hearing.  See Record Document 69.  In light of the Court's ruling on Rakel's Section 2255 motion, the Motion for Status Hearing is denied as moot.